UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON


CORNELL F. DAYE,

      Plaintiff,

v.                         Case No. 2:09-cv-00909

JIM RUBENSTEIN, Commissioner,
Department of Corrections,
CHARLENE SOTAK, Grievance Coordinator,
Department of Corrections,
THOMAS McBRIDE, Ex-Warden,
Mount Olive Correctional Complex, and
DENVER RUSSELL, CO I,
Mount Olive Correctional Complex,

      Defendants.


## PROPOSED FINDINGS AND RECOMMENDATION

On August 4, 2009, Plaintiff, an inmate at Mount Olive Correctional Complex ("MOCC") filed a complaint (docket # 1) alleging that the named defendants violated his civil rights. His complaint has four counts: "Eighth Amendment conditions of confinement," "State's conspiracy to deny Plaintiff's substantive and procedural due process rights," "unlawful discriminatory practices," and "retaliatory discharge." Plaintiff seeks a declaratory judgment, a preliminary and permanent injunction, and compensatory damages.

### Standard of Review

Pursuant to the provisions of 28 U.S.C. § 1915A, the court screens each case in which a prisoner seeks redress from a

governmental entity or officer or employee of a governmental entity.   On review, the court must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.   In Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."   Id. at 555.

The Supreme Court further explained its holding in Twombly in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombley*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. *

2

* *

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## Allegations of the Complaint

This case concerns Plaintiff's allegations that a former prison employee, defendant Denver Russell, harassed Plaintiff and retaliated against Plaintiff when he complained about Russell. (# 1, ¶ 20, at 3.) Plaintiff asserts that defendants Rubenstein, Sotak and McBride were deliberately indifferent to his complaints about Russell. Id. Plaintiff specifies that the harassment, humiliation and abuse by Russell occurred during the period May, 2007 through June 25, 2007. Id., ¶ 21. From June 26, 2007 through September 4, 2007, Plaintiff grieved the matter through the established process. Id., ¶¶ 22-31, at 3-6. From October 16, 2007 through April 15, 2009, Plaintiff pursued various remedies through the West Virginia Court of Claims. Id., ¶¶ 32-38, at 6-7.

Plaintiff's statement of his claim in count one, Eighth Amendment conditions of confinement, is as follows:

40. Plaintiff contends that Defendant No. 4, Denver Russell, violated his constitutional right not to be subjected to cruel and unusual punishment when the officer, while working as a dining hall supervisor at the

3

prison from May of 2007 through June of 2007, subjected
Plaintiff to racially charged harassment, humiliation,
and discrimination on the basis of his race.  In this
respect, Defendant No. 4 did humiliate, harass, and abuse
Plaintiff and other African-American inmates throughout
the above time period when he removed these inmates from
working in their assigned positions, ordering Inmates
Robert Haines, Brandon Green, Cornell Daye, and Ulysses
Bellamy from their assigned task as, therefore making the
named inmates perform more degrading task such as dish-
tank, pots and pans, and garbage detail while replacing
those inmates from their originally assigned task by
white inmates.  This done for no legitimate penological
purpose but to otherwise degrade, embarrass, harass,
humiliate, and abuse the named inmates on the sole basis
of their race.

      41.  Defendant No. 4 did commit the above listed
acts against Plaintiff along with the named inmates
throughout the period from May of 2007 through June 2007.

(# 1, at 7-8.)  His claim for "state's conspiracy to deny

Plaintiff's substantive and procedural due process rights," count

two, reads:

      43.  Defendants Jim Rubenstein (No. 1), Charlene
Sotak (No. 2), and Thomas McBride (No. 3) as supervisors
of Plaintiff with direct knowledge of Plaintiff's
circumstances did knowingly, and intelligently conspire
by create a policy, custom, or practice that placed
Plaintiff and other inmates at substantial risk of
injury, by refusing to correct serious risk to inmates
safety at Mount Olive in the past, and in the present
case.

      44.  Deliberate Difference was further demonstrated
by the aforementioned Defendants when Defendant No. 3,
Thomas McBride committed an overt act towards the
conspiracy by affirming the decision of the Unit Team and
Job Coordinator advising that Plaintiff could not be
restored to his original status, while failing to address
the misconduct alleged against Officer Russell, Defendant
No. 4, on the merits of the grievance, when the
circumstances indicated the allegations of harassment,
humiliation, and retaliatory discharge were more than
likely true.

Id. at 8.  His third count, for unlawful discriminatory practices, is brought pursuant to West Virginia Code § 5-11-9.  It alleges the following:

> 49.  Officer Denver Russell did discriminate against Plaintiff with respect to the terms, tenure, and conditions of Plaintiff's work contract at Mount Olive Correctional Complex, with the sole purpose of Officer Russell's actions being to harass, degrade, humiliate, and embarrass the Plaintiff in an attempt to cause Plaintiff to resign from his inmate work contract; these actions being done by Officer Russell against the Plaintiff an African-American, solely due to Plaintiff's race.

> 50.  On or about May 16, 2007, Officer Denver Russell did harass, degrade and humiliate Plaintiff by leaving him in the same area on the "Dish-tank" while rotating other white inmates around him to perform other, less physical tasks, at Mount Olive Correctional Complex, for the sole purpose of degrading, harassing, and humiliating Plaintiff, when there had been white inmates who were not rotated, and Officer Denver Russell had no other motivation to commit these acts against Plaintiff, other than Plaintiff's race.

> 51.  On May 17, 2007, to June 9, 2007, Officer Denver Russell continued to degrade, humiliate, and harass Plaintiff by taking Plaintiff from his job as a "Linemen" placing him back on the "Dish-tank."  As the result of filing the aforementioned grievance/complaint, Sgt. Smith, the supervisor of Officer Russell, did not take any action to resolve the problem from the time of the Plaintiff's filing of his complaint. * * *

Id. at 10.  The fourth claim, retaliatory discharge, states:

> 53.  This is a claim for "Retaliatory Discharge" as defined in West Virginia Code 5-11-9(7), against Officer Denver Russell (Defendant No. 4), a former correctional officer at Mount Olive Correctional Complex, who terminated Plaintiff on July 5, 2007, for exercising his right to access to the court and to redress a work related grievance.  Plaintiff did at that time attempt to redress claims of harassment, humiliation, and discrimination against the officer.

54.  On July 5, 2007, Plaintiff, while employed in the "Main Dining Hall" at the institution, as a Pot-Cook, was humiliated, abused, harassed, and discriminated against, by Officer Denver Russell, who had committed numerous acts against Plaintiff in the past, and had on the day indicated above, relieved Plaintiff's co-workers from assisting him in preparing the evening meal, after, and for the sole reason that Plaintiff had filed a grievance/complaint against the officer on June 26, 2007, to seek redress said prior acts of humilation, harassment, abuse, and discrimination committed by the officer against Plaintiff in the past.

55.  On the date indicated above, Plaintiff did ask Defendant No. 4, Officer Russell, to allow Plaintiff to leave work, in order to request a transfer to another job location to be relieved of said harassment.  Thereafter, Officer Russell did terminate Plaintiff from his employment contract at the Main Dining Hall, citing no reason, after Plaintiff advised the officer that he did not want to quit his job.  This was after Plaintiff filed a grievance on June 26, 2007, concerning Officer Russell's conduct against Plaintiff and other inmates in the dining hall.

Id. at 11.

## ANALYSIS

## Conditions of Confinement

In Farmer v. Brennan, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard.  The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" Id., at 833.

Moreover, to sustain an Eighth Amendment claim, a prisoner

must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." <u>Id.</u>, at 834. (Citations omitted.)  The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Id.</u>, at 837.

The holding in <u>Farmer v. Brennan</u> establishes that Plaintiff's complaint fails to state a claim upon which relief can be granted. While Plaintiff uses the phrase "deliberately indifferent" several times in his complaint, such conclusory statements are not sufficient to state an Eighth Amendment claim. Plaintiff has failed to show "a serious deprivation of a basic human need [and] deliberate indifference to prison conditions on the part of prison officials." <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir. 1993).  Moreover, Plaintiff has failed to allege that he suffered any serious or significant injury resulting from the challenged conditions at the SCRJ.  <u>Strickler</u> requires a showing of significant injury. 989 F.2D at 1381. Accordingly, the undersigned

7

proposes that the District Court **FIND** that Plaintiff has failed to state a claim upon which relief can be granted with respect to his conditions of confinement.

## Due Process

Plaintiff's allegations that he has been denied due process are without merit.  "In order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of 'life, liberty, or property' by governmental action." Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997).  It is well established that inmates do not have a constitutionally protected liberty or property interest in prison employment or a particular work assignment.  See Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986); Newsom v. Norris, 888 F.2d 371, 374 (6th Cir. 1989).  The undersigned proposes that the District Court **FIND** that Plaintiff has failed to state a claim upon which relief can be granted with respect to his assertion that his right to due process was denied.

## Prison Employment in General

A claim under 42 U.S.C. § 1983 must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. Plaintiff is unable to satisfy the first essential element required to sustain a § 1983 claim because his constitutional rights have

not been violated.

Although the Fourteenth Amendment of the United States Constitution prohibits a State from depriving "any person of life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined are significantly reduced for the period of incarceration.  See U.S. Const. amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991).  The fact of conviction and imprisonment implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence.  Gaston, 946 F.2d at 343.  Nevertheless, "confinement to prison does not strip a prisoner of all liberty interests."  Id.  Such interests, however, are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to a protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995)(internal citations omitted).

It is well settled that prisoners have no constitutionally protected right to any particular work assignment.  See Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978)(per curiam)("[T]he classifications and work assignments of prisoners . . . are matters of prison administration, within the discretion of the prison administrators....");  Bulgar v. United States Bureau of Prisons, 65

F.3d 48, 50 (5th Cir. 1995)(noting that "courts of appeals consistently have held that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest"); Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986)(per curiam)(prisoners have no constitutional liberty or property interest in prison employment); Adams v. James, 784 F.2d 1077-1079 (11th Cir. 1986)(prisoners have no constitutional right to maintain a particular job).

Based on the foregoing, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to state a claim upon which relief can be granted in that he has no constitutional right to a particular prison job assignment.

### Individual Capacities - Qualified Immunity

The Supreme Court has established a two-step process for evaluating whether a defendant is entitled to qualified immunity. A court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the allegations do not give rise to a constitutional violation, no further inquiry is necessary.  Id.  If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case. Id.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to allege facts which, if true, show that the prison officials' conduct violated Plaintiff's federal constitutional rights.

### Supervisory Liability

The doctrine of *respondeat superior*[1] has no application in civil rights cases filed pursuant to 42 U.S.C. § 1983.  Love-Lane v. Martin, 355 F.3d 766, 782-83 (4th Cir. 2004); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977).  Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

Plaintiff has failed to allege a constitutional injury; thus the undersigned proposes that the presiding District Judge **FIND** that Plaintiff cannot show a basis for supervisory liability.

---

[1] "Let the master answer.  This maxim means that a master is liable in certain cases for the wrongful acts of his servant, and a principal for those of his agent."  Black's Law Dictionary, rev. 4th ed. at 1475 (1968).

## Supplemental Jurisdiction

Plaintiff has included state law claims based on West Virginia Code § 5-11-9, the West Virginia Human Rights Act.  Title 28, United States Code, Section 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction . . .."  The undersigned proposes that the presiding District Judge **FIND** that it is appropriate to decline to exercise supplemental jurisdiction over Plaintiff's state law claims of discrimination and retaliation.

## Statute of Limitations

The court notes that Plaintiff's allegations relate to events that occurred more than two years prior to the date on which he filed the instant complaint.  It is well-established that civil rights cases filed in federal court follow the analogous state limitation.  <u>Blanck v. McKeen</u>, 707 F.2d 817 (4th Cir. 1983).  West Virginia has a two-year statute of limitations for cases similar to § 1983 cases and other personal injuries.  W. Va. Code § 55-2-12(b)(1981); <u>see</u> <u>McCausland v. Mason County Bd. of Educ.</u>, 649 F.2d 278 (4th Cir. 1981; <u>Rodgers v. Corporation of Harpers Ferry</u>, 371 S.E.2d 358 (W. Va. 1988).  It appears that the statute of limitations has expired with respect to the events of May and June, 2007.

**Recommendation**

It is respectfully **RECOMMENDED** that Plaintiff's complaint be dismissed for the reasons that it fails to state a claim upon which relief may be granted, and the defendants are entitled to qualified immunity because Plaintiff has not pleaded violation of a constitutional right.  It is further **RECOMMENDED** that counts one and two of Plaintiff's complaint be dismissed with prejudice and counts three and four be dismissed without prejudice.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S.

13

140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Chief Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff.


<u>December 9, 2009</u>
          Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

14